

# Missouri Court of Appeals
## Southern District

### In Division

JASON MICHAEL HOUSE, )
)
    Movant-Appellant, )
)
v. ) No. SD38108
) Filed: July 10, 2024
STATE OF MISSOURI, )
)
    Respondent-Respondent. )

APPEAL FROM THE CIRCUIT COURT OF HOWELL COUNTY

Honorable Steven A. Privette, Circuit Judge

**AFFIRMED AND REMANDED WITH INSTRUCTIONS**

Jason House (House) appeals from an order denying his amended Rule 29.15 motion to set aside his convictions for the following eight counts: first-degree murder; first-degree domestic assault; first-degree assault; endangering the welfare of a child in the first degree; resisting arrest; and three counts of armed criminal action (ACA). *See* § 565.020; § 565.072; § 565.050; § 568.045; § 568.150; and § 571.015.[1] Because the motion court's decision to deny relief after an evidentiary hearing was not clearly erroneous, we affirm. Due to a clerical error in the motion court's order, however, we

---

[1] All rule references are to Missouri Court Rules (2020). All statutory references are to RSMo (2016).

also remand with instructions for the motion court to correct the error *nunc pro tunc*, pursuant to Rule 29.12(c).

House bore the burden of proving the grounds asserted in his post-conviction motion by a preponderance of the evidence. *See* Rule 29.15(i); ***McLaughlin v. State***, 378 S.W.3d 328, 337 (Mo. banc 2012). Our review of the denial of a Rule 29.15 motion is limited to determining whether the motion court's findings of fact and conclusions of law are "clearly erroneous." Rule 29.15(k); ***Flaherty v. State***, --- S.W.3d ----, 2024 WL 3047689, at *2 (Mo. banc June 18, 2024); ***McLemore v. State***, 635 S.W.3d 554, 559 (Mo. banc 2021).

> [A]n appellate court can overrule the motion court's judgment after an evidentiary hearing if it is based on: (1) a mistake of law, (2) a factual finding for which there was insufficient evidence, or (3) a factual finding for which there was sufficient evidence but which the appellate court, nevertheless, finds was clearly erroneous, i.e., the appellate court on the whole of the evidence is left with a definite and firm conviction that a mistake has been committed.

***Flaherty v. State***, 2024 WL 3047689, at *3.

This Court presumes that the motion court's findings are correct. *Id*. at *2. An appellate court also "defers to the motion court's superior opportunity to judge the credibility of witnesses." ***Shockley v. State***, 579 S.W.3d 881, 892 (Mo. banc 2019) (internal quotation marks and citation omitted). The motion court is "entitled to believe all, part, or none of the evidence presented at the post-conviction hearing." ***State v. Hunter***, 840 S.W.2d 850, 863 (Mo. banc 1992). The following summary of facts has been prepared in accordance with these principles.

House was charged with the aforementioned eight offenses by an indictment for events that occurred in Howell County in October 2016. The charges arose from allegations that House shot and killed his estranged wife in front of his 11-year-old

daughter, and also shot at wife's boyfriend before fleeing with his daughter in his truck at high speed.

In April 2019, House waived his right to a jury trial, and the matter was tried to the trial court. House's theory of defense was that he was not guilty of murder in the first degree as charged, but instead a lesser-included offense, such as murder in the second degree or involuntary manslaughter. Defense counsel argued that, at most, House's actions were the result of sudden passion and were not premeditated. In support of this argument, House submitted exhibits regarding his physical and mental health, which included evidence that House: (1) had his right leg amputated below the knee and, as a result, suffered from chronic pain and depression; (2) suffered from migraines and nausea; and (3) attempted suicide by intentional overdose of tramadol after the shooting incident. The deputy who arrested House testified that, after House was taken into custody, House was transported for medical treatment and psychiatric evaluation because he had reportedly ingested an estimated "40 tramadol" pills. All of the exhibits House submitted were admitted in evidence.

The trial court found House guilty on all charges. The court also ordered a Sentencing Assessment Report (SAR).

At sentencing, all the parties were aware that the conviction for first-degree murder mandated, at a minimum, a sentence of life without the possibility of parole. *See* § 565.020.2. As to the remaining convictions, the State specifically requested that House's convictions on Counts V-VIII run consecutively to the mandatory life sentence without the possibility of parole. In response, defense counsel argued "to run everything concurrent":

Of course, the Court heard the evidence in this case. We respect the Court's decision. Obviously, we – we argued for a lesser included. Today's date, though – argument today as what to do with Mr. House, I – I would ask, given the sentence ramification and the sentence – issue here, this is life without parole, to run everything concurrent.

I mean, he's gonna spend the rest of his life in prison. There is no parole opportunity, and for those reasons, your Honor, I – his family is here. They've been supportive all the way through, and, of course, Mr. House has been in custody this entire time, so it'd be our request, your Honor, that you'd run his sentences con – concurrent and not consecutive.

The court sentenced House to life without parole on Count I, and then sentenced House to both concurrent and consecutive sentences on the remaining counts:

Count I, first-degree murder – life without parole;
Count II, ACA – 25 years consecutive to Count I;
Count III, first-degree domestic assault – 25 years concurrent with Count I;
Count IV, ACA – 25 years concurrent with Count I;
Count V, first-degree assault – 15 years consecutive to Counts I-IV;
Count VI, ACA – 25 years concurrent with Count V;
Count VII, endangering the welfare of a child – 10 years consecutive to previous sentences;
Count VIII, resisting arrest – 7 years consecutive to previous sentences.

This Court affirmed House's convictions and sentences on direct appeal by order and memorandum, *State v. House*, SD 36145 (Mo. App. filed September 4, 2020). Our mandate issued on September 22, 2020.

House filed an original motion seeking post-conviction relief pursuant to Rule 29.15. Thereafter, appointed counsel filed an amended motion.[2] In the amended motion, House presented a claim that defense counsel was ineffective for failing "to present [his] mental health as a mitigating factor at the sentencing hearing."[3]

---

[2] This Court has independently verified the timeliness of House's post-conviction motions. *See Moore v. State*, 458 S.W.3d 822, 825-26 (Mo. banc 2015); *Dorris v. State*, 360 S.W.3d 260, 268 (Mo. banc 2012).

[3] The judge at trial and sentencing also acted as the motion court judge.

The motion court conducted an evidentiary hearing, at which House and his counsel at trial, Joseph Passanise (trial counsel), testified.[4] According to trial counsel, the medical records were admitted at trial to establish that House lacked the premeditation to be found guilty of first-degree murder, and the "pure strategy" in the case "was trying to get the lesser included" offense of second-degree murder. At sentencing, trial counsel was also concerned with finding evidence to mitigate against the death penalty because he believed that was what the State was going to ask for at the time. In addition, trial counsel thought the medical records admitted at trial were also "fresh" in the court's mind at sentencing "because this was a rather emotional trial on both sides of the family." Once it was clear the death penalty was not at issue, trial counsel argued for concurrent sentences, although he did not specifically rely on or re-introduce mitigation evidence to do so.

After the evidentiary hearing, the motion court issued findings of fact and conclusions of law denying House's amended motion for post-conviction relief. The court initially noted that in the SAR, House "denied any mental health diagnosis." The court specifically found that trial counsel "articulated a clear reason and strategy for the manner of admitting [House's] medical and mental health records and was not ineffective in doing so." Further, the court clarified that: "[t]he court was fully aware of and had reviewed all of the medical and mental health records of [House] tendered and received in evidence at trial and considered same during sentencing." This appeal followed.

House's single point on appeal claims that trial counsel was ineffective. To obtain post-conviction relief based on a claim of ineffective assistance of trial counsel, a movant

---

[4] Trial counsel was co-counsel to Dee Wampler, who died after House's trial and before this post-conviction proceeding.

must satisfy the two-pronged test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Anderson v. State*, 564 S.W.3d 592, 600 (Mo. banc 2018). *Strickland* requires a movant to prove: (1) deficient performance by counsel; and (2) prejudice as a result of that deficient performance. *Strickland*, 466 U.S. at 687. Deficient performance is measured in terms of "reasonableness under prevailing professional norms." *Id*. at 688. As the *Strickland* court noted:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]

*Id*. at 689. For this reason, a movant must overcome a strong presumption that counsel's conduct was reasonable and effective. *Zink v. State*, 278 S.W.3d 170, 176 (Mo. banc 2009). Prejudice requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Anderson*, 564 S.W.3d at 601. Both of these prongs must be proven in order to establish ineffective assistance of counsel. *Zink*, 278 S.W.3d at 175.

House's point contends the motion court clearly erred in denying his claim because trial counsel "failed to present any mitigating evidence at his sentencing hearing regarding his overdose and apparent suicide attempt and his mental health issues generally," and had this mitigating evidence been presented, "a reasonable probability exists that such evidence would have had a mitigating effect on the punishment assessed

6

by the sentencing court" because, while House was required by statute to receive a punishment of life imprisonment without the possibility of parole for his conviction for first-degree murder, "more of the sentences for his other convictions likely would have been run concurrently to this sentence if this mitigation evidence had been presented, resulting in a lesser overall penalty[.]" According to House, he was denied effective assistance of trial counsel for these reasons. We disagree.

Here, House failed to overcome the strong presumption that trial counsel's conduct was reasonable and effective. *Zink*, 278 S.W.3d at 176. "Counsel's presentation of sentencing phase evidence is a matter of professional judgment." *Washington v. State*, 415 S.W.3d 789, 794 (Mo. App. 2013). "Whether that judgment is effective or ineffective is measured by whether the advocacy was reasonable under the circumstances, not by the sentence the defendant receives." *Id*. At sentencing in this case, trial counsel pursued a reasonable strategy to argue against the death penalty, rather than a strategy focused on House's mental-health history to argue that House's sentences should be run concurrently. "Trial counsel will not be deemed ineffective for pursuing one reasonable trial strategy over another." *Tisius v. State*, 519 S.W.3d 413, 425 (Mo. banc 2017). In addition, trial counsel *did* argue for concurrent sentencing. House's medical records were already in evidence and known to the sentencing judge. House does not identify any additional records that he wanted to admit in evidence. To the extent House faults trial counsel for failing to re-introduce existing records, trial counsel is not ineffective for failing to submit cumulative evidence. *Bates v. State*, 421 S.W.3d 547, 554 (Mo. App. 2014).

Further, House failed to carry his burden of proving that he was prejudiced by trial counsel's alleged error. "Prejudice occurs at sentencing when there is a reasonable

probability that, but for counsel's deficient performance, the movant would have received a lesser sentence." ***Bozeman v. State***, 653 S.W.3d 132, 137 (Mo. App. 2022). In ***Bozeman***, the Court held that, "[g]iven the indeterminate nature of sentencing, prejudice based on a claim that ineffective assistance of counsel affected sentencing is nearly impossible to establish, especially when the motion court and sentencing court are the same." *Id*. "Special deference is given when the motion court judge and sentencing judge are the same." *Id*. Here, not only were the sentencing court and the motion court the same, but the motion court took the opportunity to clarify in its order that the court was "fully aware of and had reviewed all of the medical and mental health records of [House] tendered and received in evidence at trial and considered same during sentencing." As such, we give special deference to the motion court's finding in this case that it had considered all of the available evidence about House's mental health at sentencing. For all of these reasons, trial counsel was not ineffective for failing to present mitigation evidence at the sentencing hearing. The motion court did not clearly err in denying this claim. House's point is denied.

On review, we discovered a clerical error in the motion court's order that requires correction. *See* Rule 29.12(c) (clerical mistakes in orders "arising from oversight or omission may be corrected by the court at any time"); *see also* ***Owens v. State***, 673 S.W.3d 839, 844 n.4 (Mo. App. 2023) (our review is expressly limited by Rule 29.15(k) to review the motion court's order). The order recites House's sentence for "Count V" as "Fifteen years **concurrent** to Counts I-IV[,]" but that sentence is incorrect. According to the oral pronouncement of sentences, the sentencing court stated: "On Count V, which is the offense of assault in the first degree, the Court sentences [House] to 15 years to be served **consecutive** to the charge – to the sentences served in Counts I through IV" (bold

8

emphasis added). There is no question that such an error is a clerical error. *See **Robinson v. State***, 359 S.W.3d 568, 571 (Mo. App. 2012) (failure to accurately memorialize a defendant's sentence as it was announced in open court is a clerical mistake for purpose of correction pursuant to Rule 29.12(c)). Accordingly, we remand with instructions for the motion court to enter an amended order correcting the clerical error *nunc pro tunc*. In all other respects, the motion court's denial of post-conviction relief is affirmed.


JEFFREY W. BATES, J. – OPINION AUTHOR

JENNIFER R. GROWCOCK, J. – CONCUR

BECKY J.W. BORTHWICK, J. – CONCUR